**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| Michael Zucchero, | Case No. 1:26-cv-00205 |
| *Plaintiff,* | |
| v. | **Plaintiff's Emergency Motion for *Ex Parte* Temporary Restraining Order and Preliminary Injunction** |
| Bizango, *et al.,* | |
| *Defendants.* | |

Plaintiff Michael Zucchero hereby requests that the Court enter (i) an *ex parte* temporary restraining order freezing the Defendants' assets and (ii) a preliminary injunction.

## I.    Preliminary Statement

Mr. Zucchero filed this action to recover assets lost to a cryptocurrency-related fraud and conversion scheme operated by a sophisticated criminal syndicate. The Defendants stole assets worth approximately $347,186—a devastating loss. Sadly, Mr. Zucchero is not alone. This is but one case among thousands arising from the ongoing crypto-fraud epidemic, to which hardworking Americans are losing billions every year.

As is typical in crypto-fraud cases, Mr. Zucchero does not know the Defendants' true identities or their precise whereabouts. But, with the

assistance of a professional blockchain investigator, stolen assets have been traced to accounts controlled by the Defendants at OKX, Binance, HTX, and Bitget. This tracing is fundamental to the relief sought in this Motion. It is the foothold in the arduous climb toward recovery.

Mr. Zucchero is the plaintiff in this action, bringing claims against Selina Romano and individuals operating under the name "Bizango" in connection with a sophisticated cryptocurrency investment fraud, commonly known as a task based employment scheme. Romano first contacted Mr. Zucchero in November 2025, offering what appeared to be a legitimate remote, part-time employment opportunity performing "product optimization" tasks through a platform that purported to be affiliated with Bizango.

Over a period of several months, Romano and the Bizango fraud network persuaded Mr. Zucchero to deposit increasing amounts of cryptocurrency into platform-controlled wallets, promising large returns and greater earnings for higher deposit "VIP" tiers. At their urging, Mr. Zucchero deposited over $370,000 in cryptocurrency and related fees. When he attempted to withdraw his account earnings, Bizango representatives imposed additional and ever-shifting obstacles, including unauthorized smart contract withdrawals from his personal wallet, ultimately misappropriating the entirety of his funds.

Mr. Zucchero now seeks the Court's immediate intervention to prevent further dissipation of traceable assets and identify all parties involved in the fraudulent scheme. By this motion, Mr. Zucchero respectfully requests an *ex parte* temporary restraining order and preliminary injunction freezing the implicated accounts.

## II.    Background

The facts giving rise to this action are set forth in detail in Plaintiff's Complaint, which is filed concurrently with this Motion and is incorporated herein by reference.

## III.    Supporting Materials

Mr. Zucchero submits the following materials in support of this Motion.

**Exhibit 1: Cole Declaration.** Evan Cole is Plaintiff's investigator in this case. Mr. Cole's declaration attests to information about the cryptocurrency-scam epidemic, cryptocurrency technology, and blockchain-tracing methodology. It also provides the blockchain-tracing report showing the locations to which the assets misappropriated from the victim were ultimately transferred.

**Exhibit 2: Hoda Declaration.** Marshal Hoda is counsel to Mr. Zucchero in this matter. Counsel's declaration attests to the reasons why the Court should not require notice before issuance of an ex parte temporary restraining order.

### IV.    Argument

#### A.    The Court Should Issue the Temporary Restraining Order Ex Parte.

Rule 65(b) provides that a court may issue a temporary restraining order without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard."[1] Mr. Zucchero has made this showing.

Mr. Zucchero's Complaint and the Cole Declaration demonstrate that the Defendants stole the victim's assets in an employment scam and have been transferring them across the blockchain.[2,3] The nature of cryptocurrency, an inherently mobile, pseudonymous asset class, means the Defendants could dissipate the stolen assets at any time, rendering moot Mr. Zucchero's claims and this Court's ability to award effective final relief.[4,5]

---

[1] FED R. CIV. P. 65(b)(1)(A)-(B).

[2] Complaint; Ex. 1, Cole Declaration, ¶¶ 3 – 5.

[3] *Id.*; Hoda Declaration, ¶ 2.

[4] *Id.*

[5] *See, e.g.*, *Harris v. Upwintrade*, 1:24-cv-00313-MJT, Dkt. 7 (E.D. Tex.) (Truncale, J.) (Aug. 8, 2024), at p. 9 (granting TRO in functionally identical pig-butchering case and noting "[i]n light of the speed with which cryptocurrency transactions are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that the [Plaintiffs'] request to freeze the exchange accounts to which those assets were transferred is justified, as have other courts considering similar circumstances"); *Cohn v. Popescu*, 1:24-cv-00337-MJT, Dkt. 8 (E.D. Tex.) (Truncale, J.) (Aug. 30, 2024) (same); *Ohlin v. Defendant 1*, No. 3:23-cv-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are

If the Defendants were provided notice of this Motion, it would be "a simple matter" for them to "transfer [the stolen cryptocurrency] to unidentified recipients outside the traditional banking system, including contacts in foreign countries, and effectively put it beyond the reach of this court."[6,7,8] Numerous courts have applied just this logic in granting ex parte asset-freezing orders in crypto-fraud cases like this one.[9]

---

made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

[6] *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified under this logic if applicant shows that "the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history").

[7] *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018).

[8] *Jacobo*, 2022 WL 2052637, at *3 (quoting *Dluca*, 2018 WL 1830800, at *2).

[9] *See, e.g.*, *Harris*, Case No. 1:24-cv-00313-MJT, Dkt. 7, at p. 7 (issuing TRO without notice in pig-butchering case where "the thrust of the [Plaintiffs'] allegations is that the Defendants are professional cybercriminals who have every motivation to place their ill-gotten gains beyond the reach of this Court or any other authority … [and they] have provided sufficient evidence to suggest that the Defendants will in fact further dissipate assets if they were given notice of this motion"); *Gaponyuk v. Alferov*, No. 2:23-cv-01317, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal

### B.    Plaintiff Has Met the Substantive Requirements for Issuance of a Temporary Restraining Order.

To obtain a temporary restraining order, the movant must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest.[10] Mr. Zucchero has met each of these requisites for the reasons set out below.

#### 1.    Element 1: The Merits.

Mr. Zucchero's Complaint alleges that the Defendants are liable for (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (2) conversion, and (3) fraud. Mr. Zucchero is likely to succeed on the merits of each of these claims.[11]

---

district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable"); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

[10] *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

[11] While venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3), Mr. Zucchero is a resident of Colorado. The Court should thus apply Colorado law to Mr. Zucchero's common-law conversion and fraud claims.

*RICO Claim.* To recover on a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962 (a "RICO violation"), (2) an injury to business or property, and (3) that such injury was caused by the RICO violation.[12] To prove a RICO violation, a plaintiff must show that the defendant is (1) a person[13] who engaged in (2) a pattern[14] of racketeering activity,[15] (3) connected to the acquisition, establishment, conduct, or control of an enterprise.[16]

Mr. Zucchero's RICO claim is likely to succeed. The Complaint makes non-conclusory allegations sufficient to establish each element, including by (1) identifying and defining the Defendants' enterprise,[17] (2) explaining their pattern of wire fraud,[18] and (3) recounting the injuries suffered as a direct

---

[12] *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023).

[13] A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961.

[14] A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

[15] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

[16] An enterprise is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (defining enterprise and recounting elements).

[17] Complaint, ¶¶ 16 – 40.

[18] *Id.*

result of the Defendants' racketeering scheme.[19] The Complaint and the Cole Declaration show that the Defendants' scheme was the very definition of an enterprise created solely to perpetrate a pattern of wire fraud, and on a global scale.[20] At least one court has issued a default judgment approving a civil RICO claim in a crypto-fraud case functionally identical to this one.[21]

*Conversion Claim.* To prevail on a conversion claim, a plaintiff must show "(1) [the plaintiff] has a right to the property at issue; (2) [the plaintiff] has an absolute and unconditional right to the immediate possession of that property; (3) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property; and (4) [the plaintiff] made a demand for the return of the property."[22]

Mr. Zucchero's conversion claim is likely to succeed. The Complaint and the Cole Declaration show that the Defendants acted intentionally, that their scheme was wrongful, and that they took control of the victim's assets

---

[19] *Id.*

[20] *Id.*; Cole Declaration, ¶¶ 3 − 5.

[21] Order on Motion for Final Default Judgment, *Sun v. Defendant 1*, No. 1:23-cv-21855 (S.D. Fla. Dec. 8, 2023), pp. 3-4 ("The allegations in Plaintiff's Amended Complaint, admitted by default, establish each element of a RICO § 1962(c) violation. Specifically, Plaintiff alleges that Defendant and her co-conspirators operate a sophisticated global internet cryptocurrency fraud and conversion scheme …").

[22] *Weisberger v. Weisberger*, 2011 IL App (1st) 101557, ¶ 45, 954 N.E.2d 282, 289.

and have not returned them.[23] Numerous courts have found that plaintiffs were likely to succeed on conversion claims in crypto-fraud cases.[24]

*Fraud Claim.* To prevail on a fraud claim, a claimant must prove: (1) the defendant misrepresented a material fact; (2) the defendant knew the representation was false; (3) the claimant did not know the representation was false; (4) the defendant made the misrepresentation intending that the claimant act on it; and (5) damages resulted from the claimant's reliance.[25]

Mr. Zucchero's fraud claim is likely to succeed. The Complaint and the Cole Declaration show that the Defendants intentionally and falsely represented that the victim's assets would be used for "trading" and "mining" cryptocurrency with the intention of causing the victim to transfer assets to the Defendants' control, that these statements were material, and that the victim acted on the Defendants' misrepresentations to the victim's detriment.[26]

---

[23] Complaint, ¶¶ 16 – 40; Ex. 1, Cole Declaration, ¶¶ 3 – 5.

[24] *See, e.g., Bullock v. Doe*, No. 23-CV-3041 CJW-KEM, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023) ("Because the claim underlying this request [for an asset-freeze TRO] is mainly conversion—i.e., defendants have plaintiff's property wrongfully—plaintiff's likelihood of success on the merits of this claim suffice for this factor to weigh in favor of plaintiff and the Court need not discuss the further causes of action."); *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024) ("It appears from the record that Defendants have no right to claim either possession or ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership.").

[25] *See Jett v. Zeman Homes, Inc.*, 2018 IL App (1st) 170690-U.

[26] Complaint, ¶¶ 16 – 40; Ex. 1, Cole Declaration, ¶¶ 3 – 5.

*2.    Element 2: Irreparable Harm.*

The irreparable-harm requirement is satisfied for the same reasons explained above regarding the need for ex parte relief. The Defendants' stolen assets are held in cryptocurrency, an inherently mobile asset that can be dissipated at the click of a button. Courts have repeatedly found a risk of irreparable harm in crypto-scam cases like this one.[27]

*3.    Element 3: Balancing.*

Mr. Zucchero's loss is devastating, and the order sought is the only hope of preserving some assets for recovery. While an asset freeze might cause temporary inconvenience to the Defendants, any restraint implemented can be undone should future developments require.[28] In addition, should the Court grant Mr. Zucchero's requests for expedited discovery and alternative service, the Defendants are highly likely to receive actual notice of this proceeding in the near term. They will then have every opportunity to appear and seek dissolution of any freeze implemented.

---

[27] *See* n.5, *supra* (collecting cases).

[28] *See, e.g., Licht*, 2023 WL 4504585, *3 (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Gaponyuk*, 2023 WL 4670043, at *3 (same, finding "a short-term freeze is unlikely to present any great harms"); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court").

*4.      Element 4: Public Interest.*

A freezing order will serve the public interest because it will "dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans."[29] It will also "prevent the Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future,"[30] and "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations."[31]

**C.      The Court Has the Authority to Issue the Asset-Freezing Injunction.**

Typically, a court may issue an order freezing a defendant's assets only after a plaintiff's claims have been brought to judgment.[32] This rule does not apply, however, where the plaintiff seeks equitable relief and a constructive

---

[29] *Licht*, 2023 WL 4504584, at *3.

[30] *Id.*

[31] *Jacobo*, 2022 WL 2052637, at *6 (quoting *Heissenberg*, 2021 WL 8154531, at *2); *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

[32] *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

trust over traceable stolen assets.[33,34] Mr. Zucchero seeks just such relief here. For that reason, the Court has the authority to issue the asset-freezing injunction sought.

### D.    The Court Should Not Require a Bond.

Rule 65(c) provides that a court issuing a preliminary injunction or TRO should do so "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[35] Yet, "[c]ourts retain extensive discretion to set the amount of a bond required as a condition for issuing a preliminary injunction and may, in fact, elect to require no bond at all."[36] The Defendants will not suffer any damages as a result of the requested asset freeze, which, as explained above, can be undone at any time if the Defendants choose to appear and challenge the injunction. Mr. Zucchero thus requests that the Court decline to impose a bond.

---

[33] *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

[34] Complaint, ¶ 147.

[35] FED. R. CIV. P. 65(c).

[36] *Astrove*, 2022 WL 2805345, at *5 (declining to require bond in crypto-theft case); *Jacobo*, 2022 WL 2052637, at *6 (same).

## V.    Preliminary Injunction

In addition to the temporary restraining order requested above, Mr. Zucchero respectfully requests that the Court set a date for a preliminary injunction hearing pursuant to Federal Rule of Civil Procedure 65(a). A TRO may remain in effect for only 14 days unless the Court extends it for good cause or the adverse party consents. A preliminary injunction hearing will allow the Court to determine whether the asset freeze should remain in place while this case proceeds to resolution, and will provide any Defendants who appear with the opportunity to be heard.

Mr. Zucchero has demonstrated the requisites for preliminary injunctive relief for the same reasons set forth in the TRO analysis above. Mr. Zucchero therefore requests that the Court schedule a preliminary injunction hearing and order the Defendants to show cause why a preliminary injunction should not be entered.

## VI.    Conclusion

For the reasons set out above, Mr. Zucchero has met the standards for issuance of (i) an ex parte temporary restraining order freezing the Defendants' assets and (ii) a preliminary injunction. Mr. Zuccherorequests that the Court issue this relief in the form of the proposed order submitted with this Motion.

Dated:  2026-06-04                    Respectfully submitted,

                                      CYBERJUSTICE LAW GROUP


                                      _____
                                      Marshal J. Hoda, Esq.
                                      Tx. Bar No. 24110009
                                      Alexander Crous, Esq.
                                      Tx. Bar No. 24136488
                                      3120 Southwest Fwy
                                      Ste 101 PMB 51811
                                      Houston, TX 77098
                                      o. (832) 848-0036
                                      marshal@cyberjusticelaw.com

                                      *Attorneys for Plaintiff*

- 14 -