IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MICHAEL ZUCCHERO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 1:26-CV-00205 |
| | § | JUDGE MICHAEL J. TRUNCALE |
| BIZANGO, SELENA ROMANO, OKX OFF- | § | |
| RAMP DEFENDANT, BINANCE OFF- | § | |
| RAMP DEFENDANT, | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR EMERGENCY
## *EX PARTE* TEMPORARY RESTRAINING ORDER

Plaintiff Michael Zucchero ("Zucchero") has filed an Emergency Motion for *Ex Parte* Temporary Restraining Order and Preliminary Injunction (the "Motion"). [Dkt. 2]. Zucchero seeks an order freezing assets associated with the Defendants and authorizing Zucchero to issue subpoenas to various third parties likely to be in possession of information about the Defendants. The Court has reviewed Zucchero's Motion and finds that, for the reasons set out therein, it faces a risk of irreparable harm if the requested relief does not issue. The Court also finds that notice to the Defendants should not be required. Accordingly, Zucchero's Motion is hereby **GRANTED**.

### I.   BACKGROUND

Zucchero alleges that the Defendants used a sham investment platform to steal over $370,000 from him. *See* [Dkt. 1 at ¶ 4]. The Defendants recruited Zucchero into a purported remote-work opportunity, directed him to a fraudulent task platform that displayed fabricated earnings, and induced him to repeatedly deposit escalating amounts of cryptocurrency by telling him he would have increased earning potential. *Id.* Zucchero was never allowed to withdraw funds, but was repeatedly harassed into depositing them. *Id.* Those funds allegedly "have now been dissipated through foreign-controlled cryptocurrency wallets and exchange accounts." *Id.*

## II.   ANALYSIS

### A. Temporary Restraining Order: Procedural Requirements

The standard for issuing an *ex parte* temporary restraining order has both procedural and substantive components. Procedurally, the Court has the authority to issue an *ex parte* restraining order where (i) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and why it should not be required." *See* FED. R. CIV. P. 65(b)(1)(A)–(B).

Zucchero satisfies both requirements. Zucchero's Complaint and Motion, and the declaration of its expert, Evan Cole, show a substantial likelihood of immediate and irreparable injury or loss. These materials suggest that Zucchero fell prey to a "task-based employment scam"—a prevalent form of cybercrime, similar to "pig-butchering," featuring well-established and recognizable patterns of deception. *See* [Dkt. 1 at ¶ 32; Dkt. 2-1 at ¶ 3]. This Court, and several others, have issued *ex parte* restraining orders in similar cryptocurrency-fraud cases.[1] The facts of this case do not move the Court to deviate from its usual practice.

Zucchero's attorney has also made a certified declaration explaining why notice should not be required. [Dkt. 2-2]. Courts may enter *ex parte* orders when providing notice to adverse parties would be impracticable or "would render fruitless [the] prosecution of the action." *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th

---

[1] *See, e.g.*, *Harris v. Upwintrade.com*, 1:24-cv-00313-MJT, Dkt. 7 (E.D. Tex. Aug. 8, 2024) (Truncale, J.) (granting TRO in functionally identical pig-butchering case); *Cohn v. Popescu*, No. 1:24-cv-00337, 2024 WL 4525511 (E.D. Tex. Aug. 16, 2024) (Truncale J.) (same); *Ohlin v. Defendant 1*, No. 3:23cv8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DAD-BAK (BAM), 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

Cir. 1993) (noting that *ex parte* order is justified where "the adverse party has a history of disposing of evidence or violating court orders or [] persons similar to the adverse party have such a history"). In the context of an order freezing assets, notice is unnecessary if the adverse parties "are likely to dissipate assets and destroy business documents." *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018). Under these circumstances, the very act of providing notice would "cause immediate and irreparable injury or damages to the Court's ability to award effective final relief." *Id.* This rationale applies with special force in cryptocurrency-fraud cases.[2]

Here, the Court is satisfied that providing notice to Defendants would be impracticable and would defeat the purpose of prosecuting the lawsuit. *See* [Dkt. 2 at 5]. Zucchero alleges that the Defendants are foreign nationals whose true identities are unknown. [Dkt. 1 at ¶¶ 7–10]. Further, none of the Defendants have known physical addresses, phone numbers, or email addresses. *See id*. Because Zucchero has no way to contact some or all of the Defendants, providing notice would be impracticable. *See Ohlin*, 2023 WL 3676797 at *2.

Zucchero's allegations also support its contention that providing notice to the Defendants would render its lawsuit futile because it would merely prompt Defendants to hide their ill-gotten assets. *See* [Dkt. 2 at 4–5]. If, as alleged, Defendants misappropriated Zucchero's funds by inducing Zucchero deposit them into a phony platform, it follows that they would likely conceal those same funds if given notice of Zucchero's Motion. *See Ohlin*, 2023 WL 3676797 at *2. Under these circumstances, issuance of an *ex parte* order is justified. *See id.*

---

[2] *See, e.g.*, *Gaponyuk v. Alferov*, No. 2:23:CV-01317-KJM-JDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable."); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

**B.  Temporary Restraining Order: Substantive Requirements**

Having found that Zucchero meets the procedural requirements for issuance of an *ex parte* restraining order, the Court now turns to the substantive requirements. To obtain a temporary restraining order, a movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017) (per curiam) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

Zucchero meets all four substantive requirements. On the merits, Zucchero makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, fraudulent inducement, and conversion. [Dkt. 1 at ¶¶ 78–98]. Zucchero has alleged and provided evidence that the Defendants deceived Zucchero and misappropriated her assets in what appears to have been an intentional scam. *See* [*Id.*; Dkt. 2-1]. Zucchero's allegations bear all the telltale characteristics of a task employment scam, suggesting that Zucchero will indeed be able to prevail on its claims once a full evidentiary record is developed. *See* [Dkt. 1 at ¶¶ 78–98; Dkt. 2-1].[3]

Zucchero has also demonstrated a substantial likelihood that he will suffer irreparable harm without the relief he seeks, for the same reasons outlined above. The instantaneous and opaque nature of cryptocurrency transactions, combined with the Defendants' cagey behavior, makes it unlikely that Zucchero will recover his lost assets unless the Defendants are precluded from withdrawing or transferring the contents of their accounts. Accordingly, the Court finds that Zucchero's request to freeze the

---

[3] The Court also notes that Zucchero seeks an asset freeze in the form of a constructive trust over specific, traceable stolen assets. [Dkt. 2 at 11]. This type of relief is common in cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts . . . have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

Defendants' bank accounts is justified by a substantial threat of irreparable harm. *See Jacobo*, 2022 WL 2052637, at *3.

Next, the Court finds that the threatened injury to Zucchero outweighs any harm the Defendants may suffer by virtue of having their accounts frozen. Again, maintaining the assets at the destination accounts is perhaps Zucchero's only realistic chance to obtain recovery in this case. At worst, the Defendants will be temporary unable to move assets if the injunction is later dissolved. *See Jacobo*, 2022 WL 2052637, at *6 (finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court").

Finally, the Court finds that Zucchero's requested injunction serves the public interest. Zucchero's case is merely a drop in a vast ocean of similar scams. *See* [Dkt. 1 at ¶ 1]. A freezing order will serve the public interest here both by deterring would-be fraudsters and by "providing assurance to the public that courts will take action to promote . . . recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6; *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

### III. RELIEF GRANTED

For the reasons set out in the Motion, the Court finds that the accounts associated with the deposit addresses listed on pages 6 and 7 of Plaintiff's Proposed Order [Dkt. 2-3] should be frozen. Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by,

for, or on behalf of the persons controlling the accounts associated with the above-referenced Receiving Addresses, or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held at or for the Receiving Addresses. In accordance with Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen (14) days from its entry unless it is extended for good cause shown. No bond shall be required to be posted by Plaintiff.

An order scheduling the preliminary injunction hearing will be docketed at a later date.

It is so **ORDERED.**

**SIGNED this 6th day of June, 2026.**

_____
Michael J. Truncale
United States District Judge

- 6 -